NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VALERIE SOTO, et al., *Plaintiffs/Appellants*,

*v.*

UMOM NEW DAY CENTERS, *Defendant/Appellee*.

No. 1 CA-CV 22-0671
FILED 12-26-2023

Appeal from the Superior Court in Maricopa County
No.  CV2018-010821
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

COUNSEL

Law Firm of Richard T. Treon, Gilbert
By Richard T. Treon
*Counsel for Plaintiffs/Appellants*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr., Robert J. Lydford, N. Patrick Hall
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y**, Judge:

¶1        Valerie Soto[1] appeals the superior court's summary judgment in favor of United Methodist Outreach Ministries New Day Centers ("UMOM") and denial of her motion for a new trial and/or motion to alter or amend the judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2016, UMOM employed Soto as a Youth Mentor at its community center, which offered services to children and young adults who resided at UMOM's neighboring housing facility. In August 2016, a former boyfriend, who had been stalking Soto, entered the community center while she was working. Soto was concerned about the children in the center and her co-workers' safety, so she led the man outside. The man then shot Soto multiple times, rendering her a paraplegic.

¶3        The day after the shooting, UMOM filed an Employer's Report of Industrial Injury with UMOM's workers' compensation insurer, CopperPoint Mutual Insurance Company ("CopperPoint"). A few days later, CopperPoint mailed Soto a letter asking for additional information and notified her that it had placed a lien on any amount she could collect from a third party. CopperPoint also notified UMOM's director of human resources that it intended to deny Soto's claim, once she properly filed one, because CopperPoint believed Soto's injury did not arise out of her

---

[1] Valerie Soto appeals on behalf of herself and her children, Valentina Soto, Adriana Medina, and Isaac Medina. References to "Soto" in this decision refer to Valerie Soto.

employment. In September 2016, a Worker's Report of Injury and Release of Medical Information was filed on Soto's behalf.[2]

¶4            Later that month, a manager called Soto and informed her that CopperPoint was denying her claim because the shooter had a personal motivation for the incident. That same day, CopperPoint mailed Soto a notice denying her claim and informing her that she had ninety days to file an appeal with the Industrial Commission.

¶5            Soto claimed that she did not receive CopperPoint's letters because they were mailed to her apartment while she was in the hospital. Soto also initially claimed that it was her supervisor at UMOM who told her that her workers' compensation claim was being denied, but she later retracted that statement and confirmed that she first learned about the denial through the phone call with CopperPoint's claims manager.[3] Soto also later recalled that her UMOM supervisor had told her she could not discuss work matters with Soto and had instructed Soto to direct her questions to UMOM's human resources director.

¶6            Soto did not appeal the denial of her workers' compensation claim. In August 2018 — two years after she was shot — Soto filed a complaint against UMOM in the superior court, alleging UMOM breached its duty to provide a safe and secure place of work, and its duty of good faith and fair dealing, and was liable for damages for negligent misrepresentation, fraud, and bad faith.

¶7            In September 2019, UMOM moved for summary judgment. The parties later stipulated that UMOM would withdraw its motion so the parties could "simplify/narrow the legal issues." In June 2020, UMOM filed an amended motion for summary judgment, arguing the superior court lacked subject matter jurisdiction because Soto's injuries occurred during the course and within the scope of her employment, so workers' compensation was her exclusive remedy. Soto requested discovery relief

---

[2] Soto initially claimed that she did not file the workers' compensation claim but states in her opening brief that her daughter filed it on her behalf and further admits that she "participated in filing the claim by drawing a line through the 'Name and Address of Insurance Company' . . . and making her illegible signature on page 2 of the form."

[3] Soto's medical records showed that in September 2016 she had "moderate cognitive impairments predominantly in the areas of memory and problem solving."

under Rule 56(d) of the Arizona Rules of Civil Procedure so she could depose UMOM and CopperPoint employees, and the superior court granted her motion.

**¶8**      In April 2022, the superior court granted UMOM's amended motion for summary judgment, finding it lacked subject matter jurisdiction because the Industrial Commission had exclusive jurisdiction over Soto's claims. Soto filed a motion for a new trial and/or to alter or amend the judgment, which the superior court denied.

**¶9**      We have jurisdiction over Soto's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶10**      Opening briefs must contain an argument with "appropriate references to the portions of the record on which the appellant relies." ARCAP 13(a)(7)(A). Soto's opening brief repeatedly fails to cite the record, and some statements are not supported by the record. Soto's reply brief is similarly deficient. *See* ARCAP 13(d). An appellant risks waiving arguments when she "fails to make a 'bona fide and reasonably intelligent effort to comply with the rules.'" *Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (citation omitted). But because we prefer to resolve an appeal on its merits, we address Soto's arguments. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966).

**¶11**      We review the grant of summary judgment de novo, construing the evidence and reasonable inferences in the light most favorable to the opposing party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a)*; accord Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990).

   I.      Subject matter jurisdiction cannot be vested in the superior court solely by estoppel.

**¶12**      Soto argues that UMOM should be estopped from arguing her claim was covered by workers' compensation because it "secretly assert[ed] a different legal position in the [workers' compensation] claim proceeding," and failed to disclose communications between UMOM and CopperPoint. But "[s]ubject-matter jurisdiction is 'conferred by our constitution or statutes' and 'cannot be vested in a court solely by waiver

or estoppel.'" *Tanner v. Marwil*, 250 Ariz. 43, 45, ¶ 9 (App. 2020) (citation omitted); *accord Swichtenberg v. Brimer*, 171 Ariz. 77, 81–82 (App. 1991). Further, Soto offered no evidence that UMOM controlled CopperPoint's decision to deny Soto's claim — or participated in the decision at all — other than filing the initial report of injury, which UMOM was required to file. *See* A.R.S. § 23-908(A) ("Every employer that is affected by this chapter . . . shall file with the commission and the employer's insurance carrier from time to time a full and complete report of every known injury to the employee arising out of or in the course of employment and resulting in loss of life or injury requiring medical treatment.").

II.     The superior court lacked subject matter jurisdiction over Soto's negligence claims.

¶13          "Unless an employee specifically rejects workers' compensation before injury, the workers' compensation system is the exclusive remedy for that employee to recover damages resulting from his or her employer's negligence." *Wagner v. State*, 242 Ariz. 95, 97, ¶ 6 (App. 2017) (citations omitted); *see also* A.R.S. § 23-1022(A).[4] Soto does not argue that she rejected workers' compensation before her injury. *See* A.R.S. § 23-906. Thus, if Soto could have recovered workers' compensation, the superior court lacks jurisdiction over her negligence claims.

¶14          Whether Soto could have recovered workers' compensation turns on whether her injury was caused by an "accident arising out of and in the course of [her] employment." A.R.S. § 23-1021; *see also Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 50 (App. 1994) ("[I]f [Plaintiff's injury] arose out of *and* occurred in the course of [her] employment, [her] exclusive remedy is workers' compensation benefits."). "When the material facts are undisputed, the question whether a claimant's injury arose out of and in the course of her employment is a question of law that we review independently." *Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 381, ¶ 8 (App. 2009) (citation omitted). We strictly interpret the workers' compensation statutes "when loss of the worker's common law rights is the object for which the statute is invoked." *Delbridge*, 182 Ariz. at 50 (citation omitted).

---

[4] As is relevant here, A.R.S. § 23-1022(A) states, "The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer . . . except as provided by § 23-906, and except that if the injury is caused by the employer's wilful misconduct . . . ."

**¶15**   The material facts here are undisputed. The parties agree that Soto was at work when she was injured and that she was injured during normal work hours. Soto alleged in her complaint that she was injured because of UMOM's inadequate security, and UMOM listed this fact in support of its amended motion for summary judgment. Finally, the parties agree that Soto did not request a hearing with the Industrial Commission concerning the denial of her workers' compensation benefits.

> ## A. Soto's injury either arose out of her employment or her negligence claim fails.

**¶16**   "To arise out of employment, an injury must result from some risk of the employment or be incidental to the discharge of the duties thereof." *W. Millwork v. Indus. Comm'n*, 536 P.3d 305, 311, ¶ 29 (App. 2023) (citation omitted). We consider whether the origin is distinctly work related, wholly personal, mixed, or neutral. *Id.* at 311–12, ¶ 29 (citations omitted). We also consider the nature of the risk, as "contributed by employment," and place it into one of the following categories:

> (1) The peculiar risk doctrine—the source of the injury is peculiar to the occupation;
> (2) The increased risk doctrine—the employment quantitatively increases the chance of injury;
> (3) The actual risk doctrine—the employment subjects the employee to the risk of this injury; or
> (4) The positional risk doctrine—the injury would not have occurred but for the fact that the employment placed the employee in a position where he was injured.

*Id.* at 312, ¶ 30 (citations omitted).

**¶17**   The superior court found that this was a mixed-risk case. We agree. Mixed-risk cases include those in which the origin of the risk is "partially work related and partially personal." *Id.* at 312, ¶ 29 (citations omitted). In mixed-risk cases, we apply the actual risk doctrine and consider whether the employment subjected the employee to the risk of the injury. *Id.* at ¶¶ 30, 33; *see also Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 293 (App. 1990) (stating that under the actual risk doctrine, "it is immaterial if the risk is common to the public, if it is in fact a risk of *this* employment"). "We do 'not weigh the relative importance of the personal and employment causes, nor do we look for primary and secondary causes; we merely inquire whether the employment was a contributing factor.'" *W. Millwork*, 536 P.3d at 312, ¶ 33 (citation omitted).

¶18          An employee's injury arises out of her employment when the employment subjects her to a risk of harm resulting from criminal activity. *See, e.g., S.E. Rykoff & Co. v. Indus. Comm'n*, 172 Ariz. 22, 24–25 (App. 1992) (holding that an employee injured by someone trying to break into the employee's car could recover workers' compensation because the employee was required to work at night and there had been prior vehicle break-ins, but "[d]espite this knowledge," the employer "did not provide a security guard or a secured area for its employee parking"); *Lane v. Indus. Comm'n*, 218 Ariz. 44, 48–49, ¶¶ 14–17 (App. 2008) (holding that a police officer shot while mountain biking could recover workers' compensation because his code of conduct "exposed [him] to an increased risk of being injured by gunfire if a crime or other threat to life occurred in his presence" and "the risk of harm . . . was distinctly related to his employment status").

¶19          In deciding a motion for summary judgment, the superior court must construe the facts and reasonable inferences in a light most favorable to Soto.  *See Andrews*, 205 Ariz. at 240, ¶ 12.  Soto's complaint claimed that she "was hired specifically because of her extensive criminal justice/corrections facility background . . .  because of the high crime rate in the area and among the residents."  Soto further alleged that, "Despite its knowledge of the dangers associated with the Community Center . . . UMOM failed to provide adequate security for its professional employees." Finally, Soto alleged, "But for the lack of 'hard' security . . . Soto would not have been able to be accessed by [the shooter] and she would not have had to lead him out of the building to protect other persons."  In contrast, in her opening brief, Soto changes her position and claims that "the only thing that caused the shooting was the prior <u>personal relationship</u> between [Soto] and her assailant."

¶20          Either way, Soto's claim fails.  Absent her allegation that UMOM's inadequate security caused her injury, Soto's complaint could not support a negligence claim.  With the allegation of a causal connection, Soto establishes a claim that should have been substantiated through a hearing with the Industrial Commission, where Soto would have to show that UMOM's inadequate security was a contributing cause of her injury, or that her employment otherwise subjected her to the risk of her injury.  *See Keovorabouth*, 222 Ariz. at 380, ¶ 7 ("It is the claimant's burden to prove all elements of a compensable claim." (citation omitted)); *W. Millwork*, 536 P.3d at 312, ¶ 33.  *Cf. Epperson v. Indus. Comm'n*, 26 Ariz. App. 467, 470–71 (1976); *Dependable Messenger, Inc. v. Indus. Comm'n*, 175 Ariz. 516, 518–20 (App. 1993); *Est. of Sims v. Indus. Comm'n*, 138 Ariz. 112, 115 (App. 1983); *Wyckoff v. Indus. Comm'n*, 14 Ariz. App. 288, 289–90 (1971).

¶21 Thus, assuming Soto could present evidence supporting her original negligence claim — that UMOM's inadequate security subjected Soto to the risk of her injury — those facts would show that her employment was a contributing cause of her injury, the first prong in qualifying for benefits in the Industrial Commission.

B. Soto's injury occurred in the course of her employment.

¶22 "'[I]n the course of' refers to the time, place, and circumstances of the injury in relation to the employment." *Ibarra v. Indus. Comm'n*, 245 Ariz. 171, 174, ¶ 14 (App. 2018) (citations omitted). "An injury is not compensable merely because it occurred during work hours and on work premises." *Dependable Messenger*, 175 Ariz. at 520 (citations omitted). Instead, the employee must be "doing what a person so employed may reasonably do within work hours and [be] at a place where [she] may reasonably be during that time." *Id.* (citation omitted). Generally, an activity is in the course of employment when it benefits the employer, but not when it is a "specifically-prohibited action." *Id.*

¶23 Soto was injured during her normal work hours. Although Soto was shot outside the building where she worked, she was on UMOM's property. The circumstances also bore a close relation to her employment because Soto was employed as a Youth Mentor, and she believed she was protecting the children and her co-workers when she led the shooter outside. Her actions also benefitted UMOM because Soto prevented the man from harming additional persons inside UMOM's building. Finally, UMOM's employee handbook directed employees that "cooperation in detecting hazards and, in turn, eliminating them, is a requirement of your employment." When Soto led the shooter outside, she was following UMOM policy — identifying a hazard and eliminating it by removing the man from the building. *Cf. Burnett v. Indus. Comm'n*, 158 Ariz. 548, 549, 551 (App. 1988) (holding that an injury occurred in the course of employment when the employee used unauthorized means, but his ultimate goal was sanctioned by his employer because the employer's policy instructed employees to challenge persons creating a disorder). Thus, Soto's injury occurred in the course of her employment.

C. The combined weight of these elements satisfies the workers' compensation standard.

¶24 We consider the totality of circumstances under both elements to determine whether there is "sufficient indicia of employment-connection." *Noble v. Indus. Comm'n*, 188 Ariz. 48, 52–53 (App. 1996). The

"arising out of" element is satisfied here because Soto alleged that UMOM caused her injury by providing inadequate security. The "course of employment" element is also satisfied because Soto was at work when the incident occurred, she was benefitting UMOM by protecting the children and her co-workers, and she was following an employment requirement by detecting and eliminating a hazard. Because the "combined weight of these elements" satisfies the standard, Soto's exclusive remedy was through workers' compensation, and the superior court did not err in granting summary judgment. *Id.* at 53.

III. Soto could not bring a bad-faith claim against UMOM.

¶25 Arizona Revised Statutes § 23-930(A) provides that the Industrial Commission "has exclusive jurisdiction as prescribed in this section over complaints involving alleged unfair claim processing practices or bad faith by an employer." Even so, bad-faith denial of a claim can be brought separately when damages are "caused by the denial of workers' compensation benefits rather than the damages resulting from the workplace injury." *Merkens v. Fed. Ins. Co.*, 237 Ariz. 274, 277–78, ¶¶ 16, 18–19 (App. 2015) (citation omitted). But an employee must first seek a compensability determination from the Industrial Commission, and Soto did not. *See id.* at 277–78, ¶¶ 18–19 (affirming summary judgment when the plaintiff sued her employer's workers' compensation carrier for bad faith, but the plaintiff had not challenged the insurance carrier's denial of benefits).

IV. The superior court did not misinterpret Rule 56.

¶26 Soto also argues the superior court erred by misinterpreting Rule 56 of the Arizona Rules of Civil Procedure. We review issues about the application and interpretation of court rules de novo. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012).

¶27 A party opposing a motion for summary judgment must file a statement specifying (1) "the numbered paragraphs in the moving party's statement that are disputed" and (2) "those facts that establish a genuine dispute or otherwise preclude summary judgment in favor of the moving party." Ariz. R. Civ. P. 56(c)(3)(B).

¶28 Soto filed a statement purportedly satisfying Rule 56(c)(3)(B) on September 8, 2020. But ten days later, the superior court ordered Soto to file a replacement response and a replacement statement of facts so Soto could incorporate new information identified through the Rule 56(d) discovery. The court's minute entry stated that Soto's filing "shall not

supplement or incorporate the filings now of record but rather shall replace entirely and supersede fully the filings now of record" and warned that motions could not be filed "in combination with another" and could not "incorporate by reference."  The superior court also orally warned Soto that her replacement statement of facts could not supplement or incorporate her prior filings.

¶29        Later, Soto filed a replacement statement of facts with a list of exhibits and provided the referenced exhibits, but this statement did not comply with Rule 56 because it did not identify, in numbered paragraphs, which facts Soto was disputing.   Soto asserts her statement of facts containing the list of exhibits was acceptable as an affidavit under Rule 56.  Soto is correct that a party may file an affidavit under Rule 56(c)(5), but nothing in Rule 56(c)(5) eliminates the requirement that the opposing party file a statement specifying the disputed facts.  Thus, Soto's statement filed after the court's replacement order did not comply with Rule 56(c)(3)(B).

¶30        Soto further argues the superior court erred by not considering her statement of facts filed on September 8, 2020.  But Soto had notice that she needed to file a replacement statement of facts, and she cites no authority supporting her contention that the superior court erred by enforcing its order.

¶31        Finally, even assuming the superior court erred, nothing in Soto's superseded statement of facts changes the outcome here.  Many disagreements that Soto identifies are irrelevant to subject matter jurisdiction — and thus immaterial — including, for example, her allegation that she did not receive notice of her denial because UMOM gave CopperPoint the wrong address for her residence.[5]  Also, Soto identifies disagreements with portions of UMOM's statement where UMOM cited Soto's complaint.  But UMOM did not misrepresent Soto's complaint, and Soto's alleged disagreements involve her contradicting her own complaint. *Cf. Perdue v. La Rue*, 250 Ariz. 34, 39, ¶ 17 (App. 2020) ("A party cannot defeat summary judgment by submitting an affidavit that contradicts the party's prior sworn testimony." (citation omitted)).  On this record, the

---

[5] Soto admitted she received notice of the denial through a phone call with CopperPoint, but even if Soto had not received notice, the workers' compensation process offered Soto a remedy, which she failed to pursue. *See* A.R.S. § 23-947(B)(3) ("The industrial commission or any court shall not excuse a late filing [of a request for a hearing] unless any of the following applies: . . . The person to whom the notice is sent shows by clear and convincing evidence that the notice was not received.").

superior court did not misinterpret Rule 56 of the Arizona Rules of Civil Procedure, but even if it had, Soto's superseded statement of facts would not have changed the outcome.

V.      Soto waived her abuse of process argument.

¶32      Soto alleges UMOM engaged in an abuse of process, but she did not raise that claim until her reply to UMOM's response to her motion for a new trial and/or to alter or amend the judgment. Replies may only address matters raised in the responsive memorandum. Ariz. R. Civ. P. 7.1(a)(3). And a claim raised for the first time in a reply is waived, so we do not address it. *See Westin Tucson Hotel Co. v. State Dep't of Revenue*, 188 Ariz. 360, 364 (App. 1997).

VI.     We do not reach Soto's allegation that UMOM violated its disclosure duties.

¶33      "[A] court that lacks subject matter jurisdiction cannot adjudicate the action." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010). Because we conclude the superior court lacked subject matter jurisdiction, we do not reach Soto's allegation that UMOM violated its disclosure duties. *See Swichtenberg*, 171 Ariz. at 87.

VII.    We grant UMOM its taxable costs on appeal.

¶34      UMOM requests its costs incurred on appeal. We award UMOM its taxable costs upon compliance with Rule 21, ARCAP.

**CONCLUSION**

¶35      We affirm the superior court's summary judgment in favor of UMOM and denial of Soto's motion for a new trial and/or to alter or amend the judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA