901 P.2d 1159

Juan DELGADO, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Northside Hay, Respondent Employer,

Paula Insurance Company,
Respondent Carrier.

No. 1 CA–IC 93–0082.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 8, 1994.

Review Denied Sept. 12, 1995.

Anita R. Valainis, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

Spencer K. Johnston, Phoenix, for respondent/employer/carrier.

Don A. Fendon, Phoenix, for petitioner.

## OPINION

LANKFORD, Presiding Judge.

This is a special action from an Arizona Industrial Commission decision denying compensability. The issue presented is whether Claimant's injuries sustained from an unexplained explosion while using his employer's air pump for a personal purpose arose out of and in the course of his employment. Because the employer condoned its employees' personal use of the air pump and the Claimant's deviation from his work was insubstantial, we conclude that the worker's injury is compensable and therefore set aside the award.

The facts are undisputed. Claimant worked for Northside Hay ("Northside") in its grain mill, which is located 16 miles from Claimant's residence in Casa Grande. Claimant commuted to work in his own truck and was neither paid nor reimbursed for traveling to work. Claimant did not use his truck for any of his employer's purposes.

On July 14, 1992, Claimant arrived at work and parked his truck near an air pump on Northside's premises. He clocked in as usual and immediately checked to see if the grain barrels needed to be cleaned. He turned on a fan, which removed dust from the mill, to prevent an explosion. Approximately one hour later, he returned to his truck, retrieved his spare tire and attempted to inflate it. For an unknown reason, the tire exploded and injured Claimant. Northside's carrier, Paula Insurance Company, denied Claimant's application for worker's compensation benefits.

At the ensuing hearing, the parties contested whether Claimant's injuries "arose out of" and "in the course of" his employment. *See* A.R.S. § 23–1021(A) ("Every employee ... who is injured ... by an accident arising out of and in the course of his employment ... shall be paid ... compensation".). Claimant testified that his duties did not require him to use the air pump. He conceded that he could have inflated his tire in Casa Grande, but he explained that he and other employees often used Northside's air pump for personal purposes and that Northside had never prohibited the practice. Northside did not introduce any evidence of its policy regarding its employees' use of the air pump or of the employees' actual usage.

The Administrative Law Judge ("ALJ") determined that the employer condoned the employees' use of the air pump, but nonetheless denied compensability. He found that Claimant was injured in an activity that was "purely personal" and that the risk of injury was unrelated to his work. *See Dependable Messenger, Inc. v. Industrial Comm'n*, 175 Ariz. 516, 520, 858 P.2d 661, 665 (App.1993) (defining "purely personal" activities as those that render no benefits to the employer). The ALJ determined the activity was purely personal because it did not directly benefit Northside, and any indirect benefit, such as enhanced employee morale, would be "ephemeral." He also decided that Northside's acquiescence in its employees' use of the air pump did not convert use of the air pump into a work-related activity.

On review, Claimant contends that his injury arose out of and in the course of his employment as a matter of law. He argues that because Northside condoned its employees' use of the air pump and benefitted from increased employee morale, that his use of the air pump was work-related. Respondents argue that Claimant is not entitled to compensation because his injury was caused by his own tire, while engaging in a purely personal activity.

■ We generally review the evidence in the light most favorable to sustaining the decision and will not set aside an Industrial Commission award if the evidence reasonably supports it. *Finnegan v. Industrial Comm'n*, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988). Because the facts are undisputed in this case, however, whether the claimant was injured in the course of employment is a question of law. *Id.*

■ The Arizona Worker's Compensation Act provides compensation for injuries that arise out of and in the course of an "activity related to the claimant's employment." *Id.* at 110, 755 P.2d at 415. The "in the course of" and "arise out of" elements are separate yet interrelated inquiries. The "in the course of" element requires us to consider the "time, place and circumstances" of an activity. *E.g., Truck Ins. Exch. v. Industrial Comm'n*, 22 Ariz.App. 158, 160, 524 P.2d 1331, 1333 (1974). The "arise out of" element requires us to consider the cause of an injury. *E.g., Royall v. Industrial Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). To determine whether a sufficient "work-connection" is established we consider the results of the two tests together. *Id.* at 349–350; 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 29.00, p. 5–477 (1993).

■ "[I]t is a matter of the totality of the circumstances as they impact on the employment relationship which determines whether an injury is compensable as arising out of and occurring within the course of the employment." *Stephenson v. Industrial Comm'n*, 23 Ariz.App. 424, 426, 533 P.2d 1161, 1163 (1975) (quoted with approval in *Finnegan*, 157 Ariz. at 111, 755 P.2d at 416). Specifically, the circumstances include:

> Did the activity inure to the substantial benefit of the employer? ... Was the activity engaged in with the permission or at the direction of the employer? ... Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? ... Could the employee reasonably expect compensation or reimbursement for the activity engaged in? ... And, finally, was the activity primarily for the personal enjoyment of the employee?

23 Ariz.App. 424, 426, 533 P.2d 1161, 1163 (1975) (quoting *Truck Ins. Exch.*, 22 Ariz. App. at 160, 524 P.2d at 1333).

■ *Finnegan v. Industrial Comm'n* is a case closely analogous to this one. In *Finnegan*, the Arizona Supreme Court concluded that an employee's use of his employer's facilities for a personal purpose is in the course of employment if the employer authorized the activity. 157 Ariz. at 111–12, 755 P.2d at 416–17. In that case an employee sustained injuries while using the equipment of his employer, an automobile repair shop, after working hours. The employee was helping a co-worker repair the co-worker's vehicle. Similar to the finding here that claimant's activity did not benefit his employer, the administrative law judge in *Finnegan* found that the repair work was "of no benefit to the shop's owner." *Id.* at 109, 755 P.2d at 414. The supreme court, however, held that where an employer approves of an activity, grants permission for the use of its equipment, and maintains a policy allowing the activity, there was "sufficient indicia of employment related activity." *Id.* at 111, 755 P.2d at 416 (quoting *Stephenson*, 23 Ariz. App. at 426, 533 P.2d at 1163). "In essence, it was a fringe benefit employees received for working at the shop. We agree that employee morale is, in fact, an indirect benefit to the employer ..." *Id.* The benefit to the employer here is different perhaps in degree but not in kind from the benefit in *Finnegan*. *See also* 1A LARSON, *supra* § 22.10, at 5–3 (employer indirectly benefits when employee engages in activity for personal comfort).

In this case, the employer did not expressly approve of its employees' use of the air pump, nor is there evidence of any written company policy. Northside merely condoned its employees' frequent use of the equipment. Nonetheless, *Finnegan* applies to this case.

■ The supreme court declared in *Finnegan* that implied consent suffices: "[w]here the employees' acts are performed with the implied consent of the employer, the injuries sustained therefrom are in the course of employment ... This latter rule is equally applicable when the employee is engaged in an act solely for his own benefit but done with his employer's permission." 157 Ariz. at 111, 755 P.2d at 416. The court also

cited with approval *Olsen v. State Accident Ins. Fund*, 29 Or.App. 235, 562 P.2d 1234 (1977), in which a supervisor acquiesced in an employee's personal activity on the employer's premises during a lunch break. 157 Ariz. at 111, 755 P.2d at 416. That acquiescence was sufficient to qualify the activity as in the course of employment. *See also* 1A LARSON, *supra* § 27.31(b), at 5–390 (the general rule is that activity for personal benefit is outside the course of employment unless "special elements ... such as employer permission *or acquiescence*" bring the activity within the course of employment) (emphasis added). Thus, an employer's tacit approval of an employee's activity may have the same effect as an express approval.

■ Because Claimant was on duty and did not have Northside's express permission to use the air pump at the time of the injury, we next consider whether he "abandoned" his employment to use the air pump, thereby placing the activity outside the course of employment. *Cf. Dependable Messenger, Inc. v. Industrial Comm'n*, 175 Ariz. at 520, 858 P.2d at 665 (an employee who "abandons" his employment by engaging in a specifically prohibited activity prior to being injured is not entitled to compensation). The record plainly shows that Claimant's deviation from his work duties was insubstantial. Claimant attended to his duties upon arriving at work. Claimant was allowed to take paid breaks during his shift. There is no evidence showing that by attempting to inflate his tire the Claimant neglected his work duties, engaged in a prohibited practice, violated a company policy,[1] or otherwise imposed a detriment upon Northside that would compromise the indirect benefits it enjoyed. We find that Claimant did not abandon his activities, and that *Dependable Messenger* does not control the result in this case.

We conclude that Claimant's use of the air pump was within the course of his employment. The injury occurred while Claimant was using Northside's equipment, on Northside's premises, and while Claimant was on

---

1. *Compare* this case *with Goodyear Aircraft Corp.*    v. *Gilbert*, 65 Ariz. 379, 181 P.2d 624 (1947).

duty.[2] Northside condoned Claimant's use of the air pump even though the use was for a personal purpose. By allowing its employees to use its equipment, Northside received an indirect benefit. Claimant's deviation from his work duties was insubstantial.

■ We next consider whether Claimant's injuries "arose out of" his employment. This test is "most clearly" satisfied when the source of injury is directly associated with the employment. *Royall*, 106 Ariz. at 350, 476 P.2d at 160. On the other hand, the "weakest" case for meeting the test is an accident in which the source of injury relates solely to risks personal to the Claimant. *Id.*

■ Causation in this case lies between these two extremes. Claimant's activity was personally motivated, but the employer condoned the activity and received an indirect benefit from it. Therefore, Claimant's use of the air hose was incidental to his employment. Moreover, the injury occurred while Claimant was using his employer's equipment. The explosion was caused in part by the pressure from the air hose. Under these circumstances, the risk of injury was not exclusively "personal" to Claimant. As our supreme court said in *Finnegan*, "but for the employment relationship, claimant would not have ... been allowed to use his employer's equipment on his premises for this purpose." 157 Ariz. at 111, 755 P.2d at 416.

We conclude from the totality of circumstances that sufficient indicia of employment-related activity exist to bring Claimant's injuries within coverage of the Act. *See Bates v. Gulf States Utils.*, 249 La. 1087, 193 So.2d 255, 258 (1967) (claimant's injuries sustained while using employer's equipment to inflate tire on a personal vehicle arose out of and in the course of employment). Claimant was injured on his employer's premises, while he was on duty, during a "reasonable and anticipated use" of his employer's equipment. *See Hunley v. Industrial Comm'n*, 113 Ariz. 187, 188, 549 P.2d 159, 160 (1976) (stating the general rule that injuries occurring during a "reasonable and anticipated use" of an employer's premises are compensable). Al-

though the activity causing the injury was performed for a personal benefit, this fact alone is insufficient to render the claim noncompensable in this case. *See, e.g., Stephenson*, 23 Ariz.App. at 425–26, 533 P.2d at 1162–63 (compensation provided for injury sustained while playing catch during claimant's lunch hour). We therefore find that Claimant's injuries are compensable. Accordingly, we set aside the award.

KLEINSCHMIDT, J., concurs.

GARBARINO, Judge, dissenting:

I respectfully dissent. The facts are undisputed. Claimant personally repaired his spare tire at home on the night before his accident. He did not, however, put air into the tire, although he could have done so in the town where he lived. Claimant drove approximately sixteen miles to work arriving at 4:00 a.m. After working for a brief time, he decided to use his employer's air pump to inflate his spare tire. The tire inexplicably blew up and Claimant was injured.

An injury must both arise out of and be sustained in the course of employment to be compensable. *Dependable Messenger, Inc. v. Industrial Comm'n*, 175 Ariz. 516, 518, 858 P.2d 661, 663 (App.1993). An injury is not compensable merely because it occurred during work hours and on an employer's premises. *Royall v. Industrial Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). An activity which is in the course of employment normally has connotations of benefits to an employer. *Anderson Clayton & Co. v. Industrial Comm'n*, 125 Ariz. 39, 41, 607 P.2d 22, 24 (App.1979).

In a comprehensive written decision, the ALJ concluded that Claimant's accident did not arise out of or occur in the course of his employment. I agree. Claimant's injuries did not arise "in the course of" his employment. He was attending to a personal problem. Reading the testimony in a light most favorable to Claimant, it reveals, at best, that Northside gave only "tacit approval" to Claimant's activity or "condoned" it. In addition to indicia of approval, the acts of the

---

2. In this respect, these facts support compensation more strongly than *Finnegan*, in which the employee's activities were performed after working hours and while he was off duty.

employee must have "connotations" of a benefit to the employer. *Id.* The majority cites *Finnegan v. Industrial Comm'n,* 157 Ariz. 108, 755 P.2d 413 (1988) to support the contention that Northside received an indirect benefit from Claimant's use of the air pump. *Finnegan* held that the employer received an indirect benefit where "the activity had the express approval of the employer, the employer's equipment was being used with his permission, and it was the employer's policy to allow his employees to work on their own cars after hours." *Id.* at 111, 755 P.2d at 416. However, the facts here are easily distinguishable from the facts of *Finnegan* where the court determined that such use of employer's equipment was a fringe benefit employees received by working at the shop and that good employee morale was an indirect benefit to the employer. *Id.* There is no evidence to support a finding that using an air pump was "a fringe benefit employees received" for working at Northside. Here the ALJ expressly found that Claimant "conferred no benefit upon his employer by inflating his spare tire on company time and using company equipment."

The majority believes that *Finnegan* controls the outcome in this case because Northside condoned Claimant's activity. The majority reaches this result because the *Finnegan* court, citing *Scott v. Rhyan,* 78 Ariz. 80, 275 P.2d 891 (1954), stated in dicta that "where the employees' acts are performed with the implied consent of the employer, injuries sustained therefrom are in the course of employment." 157 Ariz. at 111, 755 P.2d at 416. *Rhyan* involved circumstances vastly different from this case. In *Rhyan,* our supreme court also considered whether the employee's conduct arose in the course of his employment. 78 Ariz. at 84, 275 P.2d at 893–94. The employee's normal employment tasks included administering oxygen in an ambulance. *Id.* at 83, 275 P.2d at 893. However, in response to an emergency, the employee, after conversing with his employer, boarded an airplane to administer oxygen. *Id.* at 84, 275 P.2d at 893. Shortly after take-off the plane crashed and killed all aboard. *Id.* Our supreme court upheld the Industrial Commission's award because the employer recognized the emergency and ac-

quiesced in the employee's acts. *Id.* at 85, 275 P.2d at 894. In the present case, Claimant does not contend that he was responding to an emergency. Nor is there any indication that Northside understood that Claimant was subjecting himself to a risk when he used the air pump. Thus, I disagree with the majority's conclusion that Northside tacitly approved of Claimant's activity. Therefore, in my view, there is insufficient indicia of employment-related activity to hold that Claimant's acts arose in the course of his employment.

I also disagree with the majority's conclusion that Claimant's injuries "arose out of" his employment. Fixing and inflating tires was not a part of Claimant's job description as a grain worker, and Claimant did not use his truck to perform services for Northside. As the majority concedes, Claimant's activity was personally motivated. The majority states that the explosion was caused in part by the pressure from the employer's air hose. While it is true that air pressure is necessary to inflate a tire, had Claimant properly repaired the tire or had the tire not been defective, the addition of air pressure would not have blown it up. In any event, there is no proof that the tire would not have blown up regardless of where Claimant inflated it, be it Northside's premises or a local gas station. On these facts, the cause of injury relates to risks personal to Claimant. *Royall,* 106 Ariz. at 350, 476 P.2d at 160.

This is an unwarranted extension of the law which will have the effect of discouraging employers from granting their employees a common consideration one might expect in a civilized society. The ALJ correctly observed that although the workers' compensation laws are broad in scope and are to be liberally construed, they do not provide general health and accident coverage for employees. I believe the ALJ's findings are clearly supported by the evidence and should not be set aside.

I would affirm the award.